Van Keuren *v.* McLaughlin.

VAN KEUREN and others *vs.* McLAUGHLIN and MALLORY.

1. When it appears at any time before final decree, that a person not made a party is a necessary party to the suit, courts of equity will, of their own motion, arrest the proceedings, that such person may be made a party.

2. A person who has an interest in property which is the subject matter of a suit, is not a necessary or proper party if his interest cannot, in any way, be affected by the result of the suit. But if it is necessary to have such person in court to settle all or part of the questions in controversy between the parties, he is a necessary party to the suit. The general test is the interest of such person in the object of the suit, sometimes called its subject, in contra-distinction to subject matter.

3. No person is a necessary party against whom the complainant is entitled to no relief, and as against whom, at the hearing, the bill must be dismissed.

4. By a general assignment for the benefit of creditors, the equity of redemption in mortgaged premises vests in the assignee, whether the mortgage deed is absolute or conditional on its face. But property which the debtor has fraudulently conveyed to hinder and delay creditors, which he could not convey to strangers, does not pass by such assignment.

5. Money due at the time of such assignment, to the assignor from purchaser to whom he had assigned his property to defraud creditors, will belong to the assignee. And if the purchaser, after the assignment, pay it

to the assignor, it is no bar to the right of the assignee; the payment is in his own wrong.

6. But a court of equity will not, in a decree which declares such sale void as against the complainant as a judgment creditor, direct the purchaser to pay or account for the proceeds to the assignee.

7. When a creditor of the debtor making an assignment for the benefit of creditors, who has not exhibited his claim to' the assignee, discovers that lands of the debtor not sold or administered by the assignee, had been conveyed by way of mortgage only, though by deed absolute on its face, such creditor is entitled to his pro rata dividend out of the value of the equity of redemption, as property found by him and not accounted for by the assignee before distribution.

8. The ratable proportion of such creditor is, in the first place, to be paid on his claim the same per centage as the other creditors have received who duly presented their claims, and then to have the residue of such newly found property distributed equally between him and such creditors.

This cause was argued upon final hearing on the amended bill, answers, and proofs.

*Mr. Ransom,* for complainants.

*Mr. Williamson,* for Mrs. McLaughlin.

*Mr. J. F. Randolph,* for Mallory, assignee.

THE CHANCELLOR.

This cause was argued between some of the parties, on its merits, and decided at the May term, 1868. The controversy then was between the complainants, who were judgment creditors of James McLaughlin, and Michael McLaughlin, the father of James, to whom he had conveyed his real estate, shortly before the entry of the judgment of the complainants. The matter in controversy was, whether these conveyances to Michael were fraudulent, and void, as against the complainants, who alleged that they were made to defraud and delay them, and without adequate consideration, or that they were at best, mortgages, to secure the real amount due from James to his father.

This court at the hearing, supposed that the only subject

of the controversy was the validity of those deeds as against the complainants' judgment, and that the object of the suit was to have them declared void as against it. And although, it appeared in evidence that James had made an assignment to J. F. Mallory, for the benefit of all his creditors, the day before the entry of the judgment of the complainants, yet, as the title of Mallory could not be affected by any decree in this cause, while he was no party, as the fact of the assignment did not appear in the pleadings, and its validity was not contested, the hearing was proceeded in without directing him to be made a party. This was done under a mistaken application of the rule, that the interest which requires persons to be made parties, is an interest in the question in controversy, or in the object of the suit, and not a mere interest in the property that is the subject matter of the suit, that cannot be affected by it. The rule laid down by *Story's Eq. Pl.*, § 72, "that it is not all persons, who have an interest in the subject matter of the suit, but in general, those only who have an interest in the object of the suit, who are ordinarily required to be made parties;" and by Calvert, in his treatise on parties to suits in equity, p. 10, "the propriety of a person being made a party, depends upon his interest, not in the subject matter, but in the object of the suit," has been the rule adopted and acted on, in this court. A mortgage made, subject to a prior mortgage, or to a lease, or to a life estate, or on land encumbered by ground rent, or by tax assessments, which take precedence of all interests in the lands, has been allowed to be foreclosed without making the prior mortgagee, lessee, life tenant, owner of ground rent, or the municipal corporation to whom taxes were due, parties, although in these cases, such persons have a clear interest in the land, which is the subject matter of the suit. The rule has been that it is not necessary to make any one a party, against whom the complainant does not ask, and is not entitled to any relief, and as against whom the bill must be dismissed, with costs, upon demurrer, or at the final hearing.

This rule, as applied to such cases, I apprehend it was not the intention of the Court of Appeals* to abrogate, although an expression in the opinion of the court as delivered, referring to "the right of all persons interested in the subject matter of the suit," might, taken by itself, lead to that inference. If such had been the intention, the persons who appear to hold the previous mortgages on these lands would have been directed to be made parties, as well as Mallory·

But in this case it appears that the rights of the complainants as against the original defendants, and the property in question, cannot be settled, without first adjusting the claims of the assignee against Michael McLaughlin, and that part of the claim of the complainants must be paid through that assignee; and the assignee became a necessary party to the suit. This matter was not called to my attention, and escaped my observation at the first hearing. The Court of Appeals perceiving the difficulty, did what courts of equity have power and are bound to do at any stage of a suit before its final determination; it arrested the hearing of the cause, that the proper party might be brought in, and remitted the record for that purpose. For that cause alone, and for that purpose, the decree was reversed.

Mallory, the assignee, has now been made a party, by proper amendments to the bill, and has filed his answer, claiming that if the conveyance to Michael McLaughlin shall be adjudged void, he is entitled to receive the property in trust for the general creditors, as the assignment to him was executed and recorded the day previous to the judgment of the complainants.

Michael McLaughlin having since died, Catharine Mc-Laughlin, his universal legatee and devisee, and the executrix of his will, has been made a party in his place.

The question between the complainants and Mrs. Mc-Laughlin, has been submitted by counsel, without any new

*The opinion of the Court of Appeals was delivered at March Term, 1860, and will be found in the latter part of this volume.

argument, and upon the same evidence as at the first hearing of the cause. My opinion upon that question remains the same. I think that the two deeds first given by James to his father, were given in good faith, to secure to his father a debt honestly due, and were valid mortgages to that amount; and that the transaction of July 9th, 1866, by which these deeds were to be absolute, and another deed was given, and the Clark mortgage assigned, was intended to delay and defraud creditors, and was void as against the complainants; and further, that without regard to such fraudulent intention, the deeds of May 19th, 1866, being given, as admitted by the answer, as security, were mortgages only, and that they could not be changed into absolute deeds, and the equity of redemption released by a parol agreement without writing.

A new question arises in this case, as now presented, upon the rights of the assignee. His title is by virtue of the assignment. That, by its true, proper effect, conveys to him all the property included in its words, that is, " all the real estate whereof James McLaughlin was then seized or possessed, or in any way entitled to, and also all and singular his goods and chattels, bonds, notes, books of account, contracts, rights and credits whatsoever and wheresoever." These the assignment would convey by its own efficacy, without the aid of the statute. The fourth section of the statute declares that the property conveyed shall not be limited by the inventory annexed, but the assignee shall be entitled to any other property which may belong to the debtor at the time of the assignment, and comprehended within the general terms of the same. And in the thirteenth section it declares that the assignee shall have as full power to dispose of, and recover all the property of the debtor, as he himself had at the assignment.

Then as the deeds of May 19th, are held to be mortgages, and the equity of redemption is not released by the parol contract, but vested in James at the assignment, it passed by it to Mallory, and he as trustee for the creditors is entitled to it.

With regard to the lot conveyed on July the ninth, the question is different; that was conveyed absolutely and not by way of mortgage, but the conveyance was to defeat creditors, and as to them it is void. Neither the terms of the assignment nor the provisions of the act, vest this in Mallory. It was not real estate of which James was seized or possessed, or in any way entitled to, at the time of the assignment. Nor does the fourth section of the statute affect it; it did not then belong to the debtor, neither was it included in the general terms of the assignment. Nor was the assignee authorized by the thirteenth section to convey it, for James could not then have conveyed it. The conveyance to his father, though void as to creditors, was valid as against him.

If the transaction of the ninth of July had not been held to be fraudulent, and the release of the equity of redemption void, as being by parol, the sum of $5000, to be paid by Michael to his son, which was not paid until October eighth, would have been at the date of the assignment a debt of James to his father, and both by the terms of the assignment and the provisions of the act, would have passed to the assignee; and the payment made by the father to the son would have been void as against the assignee, without any reference to the evident object of both father and son, to defraud creditors in making that payment. But in a judgment which declares that conveyance void, the payment of the consideration cannot be enforced.

The mortgage of Clark is different. The assignment of that to the father, is not and cannot be declared void in this suit; other parties who are interested are not before the court. But by the answer of James and Michael, that mortgage was transferred to Michael, not for himself, but to raise money for James; at the time of the assignment to Mallory, it was held in trust for James, was his property, and clearly passed to the assignee. The money raised by Michael on it by the transfer to Hibbler, wherever that was done, belonged to James, and as it was not paid to him until October 8th,

the payment did not absolve Michael from his debt to the assignee. Michael clearly owed that amount to the assignee; and as in this suit as it now stands, the two tracts first conveyed are held by the assignee, subject to the debt to Michael, which they were conveyed to secure, in taking an account of that debt as between the devisee and executrix of Michael, this amount must be deducted, and those lands be held only for the balance. In a court of equity where the parties are before the court, all questions in controversy will be determined between them to avoid all further litigation. Therefore, for this matter, it is of no importance whether this deduction is authorized by the statutes of set off, or the rule adopting them in equity.

The complainants are entitled to a decree that the deed of July 9th, 1866, to Michael McLaughlin, is void as against their judgment, and that the lot described in it did not pass to Mallory by the assignment.

The proceeds of the sale of the lots conveyed in the two deeds of May 19th, subject to the claim of the executrix of Michael McLaughlin for the balance due him, belong to Mallory, as trustee for the creditors of James.

The next question is, to what creditors, and in what proportion. The assignee has settled his final account, but that does not terminate the trust or put an end to his power to recover other property. But no creditor who has not exhibited his claim within the time limited, can come in for a dividend, unless the estate is sufficient to pay all, or unless he shall find some estate not accounted for by the assignee before distribution. This estate, this equity of redemption, and the bond and mortgage of Clark, did not come to the possession of the assignee, and were not accounted for by him; he settled his final account, and closed his trust without them. And it is clear that the complainants have in these such rights as are given by the eleventh section. The question arises, what is meant by the words "a ratable proportion therefrom." The complainants contend that they are entitled to the same proportion of their debt from this prop-

erty, that the other creditors received 'from the assignee, that is 66.27 per cent. of the whole debt, and if anything remains, then to an equal proportion on it with the creditors whose accounts were duly presented, to the extent of their whole debt. The assignee contends that the newly found property must be divided between the complainants and the creditors, in proportion to the original debts due to each.

The words are somewhat vague, and will perhaps admit of either interpretation. The first and natural meaning of the words appears to me to be, that a ratable proportion here means the same as the other creditors had received. The act does not direct the fund to be divided ratably between them and the other creditors, nor does it say a ratable proportion *thereof*, the natural expression if it was intended to be divided among all, and which would exclude the estate before divided. But if the words contained no guide to the interpretation, and either construction could be put upon it, the duty of the court is to put such as would be most consistent with justice and equity. In dividing property among such as have an equal claim thereto, the rule is " that equality is equity;" and it is clear that in this case to give to the complainants out of the property which they have discovered, first, the same proportion as the other creditors have received out of that discovered by the assignee, and then to give them a pro rata share in the excess, is equality. The statute excludes those who have not presented their claims within a time limited for that purpose, but this is because it is necessary that a time should be limited that the estate may be settled up. The omission is no wrong, and by it such creditor should not be deemed to have forfeited any right except that which the statute takes away. And the act should be so construed as to induce creditors to find out the concealed property of debtors who make assignments, by placing them on an equal footing with creditors who have taken no pains to discover and defeat fraud. *Vigilantibus non dormientibus leges subservient.* In many cases, debtors having the choice of the

assignee, make the assignment to some personal friend, who will not look into or contest transfers made to relatives or personal friends, to preserve property for the debtor; this may have been the case where about one-half of the estate was so transferred. And a creditor who is not willing to come in under such an assignee, but will seek discovery, and reach such property, should have at least the same share of it, as the others received of the estate surrendered by the debtor, as a reward of his energy to encourage such attempts. Again, if the creditor who finds property could only have out of such property a ratable proportion with that which the other creditors are to secure out of the same, then in this case, as the other creditors can only receive 33.73 per cent. of their debts, being the balance due upon them, the complainant can only be paid that proportion of his debt, although there is abundance to pay the whole of it. The construction to be given to this section therefore must be, that the creditor who finds other property is entitled to be paid ratably with the other creditors to the full amount which they have received, or shall receive on their claims, provided the property so found is sufficient for that purpose.

The complainants are on these principles entitled to have: First. The lot conveyed by the deed of July 9th, 1866, declared subject to their judgment, and the proceeds of sale applied to the payment of it; secondly, to have the amount due from James McLaughlin to the executrix of his father, on account of the debt of $7608, which the deeds of May 19th, 1866, were given to secure, and now due, ascertained by deducting from the principal the principal due on the mortgage from Clark and wife to James, on the 9th day of July, 1866, when it was assigned to Michael McLaughlin, and the interest then due on that mortgage, from the interest due to Michael McLaughlin on the debt to him from James; thirdly, out of the surplus of the proceeds of the property conveyed to Michael by the deeds of May 19th, 1866, over the amount due to his executrix so ascertained, the complainants are entitled to be paid, first, such amount as with

the sum realized by them from the sale of the lot conveyed by the deed of July 9th, 1866, will pay 66.27 per cent. on the amount due on their judgment on the first day of February, 1867, when the dividend was paid to the other creditors, and next, out of the residue, a ratable proportion with the creditors who presented their claims to the assignee, in proportion to the amount of such claims then unpaid, not to exceed such amount.

And for this purpose there must be a reference to a master to ascertain and settle such amounts, and when ascertained, the property must be sold under the direction of this court, by a master to be designated for that purpose.

