RACHEL S. CHRISTOPHER, administratrix, &c., of Theodore L. Christopher, deceased, complainant and appellant,

*v.*

ISAAC T. WILKINS et ux. et al., defendants and respondents.

[Submitted December 9th, 1901.   Decided March 3d, 1902.
Filed March 3d, 1902.]

1. Section 11 of the statute of limitations (*Gen. Stat. p. 1976*), which provides that "no endorsement or memorandum of any payment written or made, after this act shall go into effect, upon any promissory note, bill of exchange or other writing, by or on behalf of the party to whom such payment shall be made, shall be deemed sufficient proof of such payment so as to take the case out of the operation of this act," does not render such endorsements and memoranda inadmissible in evidence in cases where otherwise they would be admissible. Its effect is to prevent their being accepted as sufficient evidence to prove the payment for the purpose of avoiding the bar of the statute, and therefore to require evidence of the payment in addition to that contained in the endorsements or memoranda.

2. Under the revised act concerning evidence (*P. L. of 1900 p. 363 § 4*), in order to qualify a non-representative party to testify to transactions between such party and the person deceased, or concerning statements made by the person deceased in the hearing of the non-representative party, it is sufficient that the representative party shall have first testified in his own behalf to any transaction with or statement by the deceased. The testimony of the non-representative party is not to be limited to those transactions and statements concerning which the representative party has testified.

On appeal from a decree advised by Vice-Chancellor Reed, who delivered the following opinion:

The bill is filed to foreclose a mortgage executed on May 29th, 1873, by Isaac T. Wilkins and Lydia Ann Wilkins, his wife, to Theodore L. Christopher, and payable in one year. The bill charges that no interest has been paid since March 25th, 1890, and prays for an accounting and sale of the property.

The answer of Lydia Ann Wilkins, the mortgagor, admits the execution of the mortgage, but says that no interest has been paid upon the said mortgage nor has the debt been acknowledged. She asks for the benefit of this defence, as if she had pleaded the statute of limitations. She also filed a cross-bill, setting up that the deceased mortgagee, in his lifetime, occupied the mortgaged premises since March, 1876, to the time of his death (he having died on June 12th, 1899), and received the profits from the same, and she asks for an accounting.

The complainant joins issue upon the answer, and files an answer to the cross-bill. The answer admits that the deceased occupied the mortgaged premises for a portion of the time mentioned, but at a rental fixed upon by an agreement between him and Lydia Ann Wilkins. It denies that the profits were more than sufficient to pay the mortgage debt.

The defendant Lydia Ann Wilkins joins issue on the answer to the cross-bill.

There is no sufficient evidence to convince me that a cent of interest was ever paid by Lydia Ann Wilkins, or anyone in her behalf, to the mortgagee. The endorsements made upon the bond by the mortgagee are not evidential of that fact. Certain declarations of Lydia Ann Wilkins, made at a late conference between representatives of the mortgagee and herself, are relied upon. They, however, are so liable to have been misinterpreted that I am not convinced of their accuracy, in view of the fact that, upon the stand, she swore that she had never paid any interest, and in view of the further fact that the mortgagee was in possession of the mortgaged premises from 1876 until his death, enjoying the use of them without any accounting.

Besides, against her declarations are those which are sworn

to have been made, by the mortgagee himself during his life, to the effect that the mortgage was outlawed and that no interest has been paid upon it.

I am constrained to the conclusion that there can be no decree for the complainant.

Nor do I see how there can be a decree for an accounting in favor of the defendant on her cross-bill. As already observed, the mortgagee took possession of the mortgaged premises in 1876, and retained possession until his death in 1899. Lydia Ann Wilkins denies that he was in possession as her tenant. There is nothing, therefore, to show that his occupancy was other than that of mortgagee in possession. The eighteenth section of the statute of limitations provides that if a mortgagee, or those under him, be in possession of the lands, tenements and hereditaments contained in the mortgage, or any part thereof, for twenty years after default in payment by the mortgagor, then the right of equity of redemption of the mortgagor shall be forever barred. It was held in *Chapin* v. *Wright,* *14 Stew. Eq. 438, 444,* that this is a peremptory provision, and is not even affected by the fact that the mortgagee had recognized the existence of the mortgage relation, by having filed a bill to foreclose. The right to an accounting is an incident to the existing relations as mortgagor and mortgagee. Lydia Ann Wilkins denies the existence of such relation. Besides, redemption is the leading incident of such relation; when the right to redeem is gone, the relation ceases, and with it ceases the right to an account which is based upon it.

The cross-bill must also be dismissed.

*Mr. Robert S. Clymer,* for the appellant.

*Mr. Eckard P. Budd,* for the respondents.

The opinion of the court was delivered by

PITNEY, J.

The present appeal relates only to so much of the decree as dismisses the complainant's bill for foreclosure. With respect

to this, the conclusions of the learned vice-chancellor are fully sustained by the evidence. His remark, however, that "the endorsements made upon the bond by the mortgagee are not evidential" of the fact of payments of interest, is inaccurate, unless it was made with reference to the particular endorsements before him, rather than as an expression of a general rule of evidence. No copy of the endorsements has been laid before us, but from the other evidence in the case we understand that there were successive endorsements in the handwriting of Theodore L. Christopher, some of which were dated before the time when the bond and mortgage would have·been barred by the statute of limitations and some dated at later times.

It was formerly held in England, and generally in this country, that memoranda or receipts endorsed by a creditor upon a bond or note, admitting payments of interest or part payments of principal, and appearing to have been fairly made contemporaneously with the receipt of money, were admissible in evidence, after the death of the party making them, to show partial payments by the debtor, and thereby to raise a new promise to pay the balance of the debt, so as to avoid the bar of the statute of limitations. But this was allowed only when the receipts either bore date at a time before the debt was barred, or were shown, by evidence *aliunde,* to have been made before the debt was barred.

They were then admitted on the ground that, when made, the memoranda were against the pecuniary interest of the persons making them. *Wood Lim.* § *115; Ang. Lim.* §§ *241, 242; 1 Greenl. Evid.* § *121; Higham* v. *Ridgway, 10 East 109; Sm. Lead. Cas. 1607,* and cases cited in note to edition of 1888.

Under this rule it is obvious that in some circumstances the endorsement or.memorandum alone might be deemed sufficient proof of payment so as to take the case out of the operation of the statute of limitations.

In the year 1828 Lord Tenterden's act *(9 Geo. IV. c. 14)* was passed, by section 3 of which it was enacted, in substance, that no endorsement or memorandum of any payment made or written upon any promissory note, bill of exchange or other writing, by or on behalf of the party to whom such payment was made,

should be deemed sufficient proof of such payment so as to take
the case out of the operation of the statute of limitations.

The provisions of this act of parliament have been very gener-
ally adopted by statute in this country, and in the year 1874
were embodied in the revision of our act for the limitation of
actions. *Gen. Stat p. 1974.* By the eleventh section of that re-
vision it is enacted

"That no endorsement or memorandum of any payment written or made,
after this act shall go into effect, upon any promissory note, bill of ex-
change or other writing, by or on behalf of the party to whom such pay-
ment shall be made, shall be deemed sufficient proof of such payment so
as to take the case out of the operation of this act."

The proper scope of this section is indicated by its plain lan-
guage. It does not render such endorsements and memoranda
inadmissible in evidence in cases where otherwise they would be
admissible, but it prevents their being accepted as sufficient evi-
dence in and of themselves to prove the payment, for the pur-
pose of taking the case out of the operation of the statute of
limitations. Its effect is to require evidence of the payment in
addition to the endorsement, but not to exclude the endorsement
from consideration as evidence if otherwise admissible. The dis-
tinction was evidently recognized by Mr. Justice Depue in de-
livering the opinion of the supreme court in *Parker* v. *Butter-
worth, 17 Vr. 244, 247.*

The point just discussed was, of course, not involved in the
case of *Oberg* v. *Breen,* 21 *Vr. 145,* where this court held that
the books of account of a merchant are not evidence in his own
favor, with respect to payments credited in them to his customer.
In that case the merchant was living, the customer dead; and
the decision was based on the inadmissibility of mercantile books
for the purpose of proving payments of money.

Upon the argument of the present appeal it was strongly in-
sisted that the vice-chancellor erred in admitting the testimony
of Lydia A. Wilkins, the mortgagor (she being a defendant in
the suit) with respect to certain statements by and transactions
with Theodore L. Christopher, whose personal representative was
the complainant. The case shows that Mrs. Wilkins was called

Christopher *v.* Wilkins.

as a witness in her own behalf before the complainant was called, and that on her examination she was asked to testify with respect to a transaction with Theodore L. Christopher, but, on objection by complainant's counsel, she was prohibited from giving such evidence. Afterwards Mrs. Wilkins was recalled in behalf of the complainant, but she gave no evidence concerning any statement by or transaction with the deceased. Subsequently the complainant, being the representative of Theodore L. Christopher, was called in her own behalf in rebuttal, and, under examination by her counsel, testified that she had seen her husband write in his lifetime and was familiar with his handwriting. Being shown the mortgage in suit, she was asked in whose handwriting were the receipts, and signatures attached to the receipts, appearing upon the mortgage. She replied that they were those of Theodore L. Christopher; that she had seen him sign one or two of those receipts; that she did not remember distinctly what date it was, but thought it was in 1894 or 1895. Thereafter Lydia A. Wilkins was recalled in behalf of the defendants and was permitted, against the objection of complainant's counsel, to testify with regard to transactions with and statements by Theodore L. Christopher other than the supposed payments of interest upon the mortgage. These payments she at the same time denied.

It is not necessary at this time to refer to sections 3 and 4 of the revised act concerning evidence, approved March 27th, 1874 (*Gen. Stat. p. 1397*), and the supplement, approved February 25th, 1880. *P. L. of 1880 p. 52; Gen. Stat. p. 1407.* The supplement of 1880, and its bearing upon the act of 1874, were fully discussed in this court in the case of *McCartin* v. *McCartin, 18 Stew. Eq. 265,* and a majority of the court adhered to the opinion expressed by Mr. Justice Van Syckel, who said: "My conclusion is that, if the representative offers himself as a witness, and testifies to any transaction with or statement by the testator or intestate, the other party may be a witness on his own behalf as to all transactions with or statements by such testator or intestate which are pertinent to his case. But if the representative offers himself on his own behalf and does not testify to any transaction with or statement by his testator or intestate, the

other party is excluded from testifying with regard to any such transaction or statement."

The several acts concerning evidence were again revised by the legislature of 1900, all previous statutes on the subject being, at the same time, repealed. Section 4 of this revision (*P. L. of 1900 p. 363*) is as follows:

"In all civil actions any party thereto may be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity; provided, this section shall not extend to permit testimony to be given by any party to the action as to any transaction with or statement by any testator or intestate represented in said action, unless the representative offers himself as a witness on his own behalf, and testifies to any transaction with or statement by his testator or intestate, in which event the other party may be a witness on his own behalf as to all transactions with or statements by such testator or intestate which are pertinent to the issue."

It will be observed that the legislature has thus adopted the language of Mr. Justice Van Syckel in the *McCartin Case* almost *in hæc verba*. This language is so plain as to carry its own interpretation.

In the case at hand, the administratrix having offered herself as a witness in her own behalf, and testified in her own behalf to transactions with her intestate, to wit, that she had seen him write and had seen him sign certain of the receipts for interest appearing upon the mortgage in suit, the other party (Mrs. Wilkins) thereupon became a competent witness in her own behalf as to all transactions with or statements by the intestate which were pertinent to the issue. In order to qualify the non-representative party to testify concerning transactions between such party and the person deceased, or concerning statements made by the person deceased in the hearing of the non-representative party, it is sufficient that the representative party shall have first testified to any transaction with or statement by the deceased. It is not necessary that the testimony of the representative party shall have related to a transaction between the non-representative party and the person deceased, or to a statement made by the person deceased in the presence of the non-representative party. Nor is the testimony of the non-rep-

resentative party to be limited to those transactions and statements concerning which the representative party has testified. Testimony by the representative party concerning any transaction with or statement by the deceased, although the deceased and the representative party thus testifying may have been the only parties to the transaction mentioned, and although the statement by the deceased may have been heard only by the representative party, is sufficient to qualify the non-representative party to testify concerning all transactions with and statements by the person deceased which are pertinent to the issue.

The testimony of Lydia Ann Wilkins concerning transactions with and statements by Theodore L. Christopher, given after the examination of Mrs. Christopher, the administratrix, was therefore properly admitted and considered by the learned vice-chancellor.

The decree, so far as appealed from, should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, HENDRICKSON, PITNEY, KRUEGER, ADAMS, VREDENBURGH, VOORHEES, VROOM—14.

*For reversal*—None.