WILLIAM CRANSTOUN, administrator with the will annexed of
John J. Smisson, deceased,

*v.*

GEORGINA WESTENDORF et al.

[Submitted September 10th, 1919.   Decided October 16th, 1919.]

1. Where an executor is directed to sell land and divide the pro-
ceeds, the land is converted into personal property.

2. A power of sale of lands vested in an executor, deceased, is trans-
mitted to the administrator with the will annexed under *Comp. Stat. p.
2262 § 13.*

3. A testamentary gift in remainder expressed in terms of to pay and
distribute only is, as a general rule, contingent and does not vest until
the time for distribution arrives.   But the rule does not apply when the
gift in remainder is postponed for the convenience of the estate.   In such
case the gift vests at the death of the testator;   following *Post* v. *Her-
bert, 27 N. J. Eq. 540.*

4. A power of sale of land vested in an executor cannot be defeated
by an election of the heirs-at-law to reconvert the personalty into realty
except by the unanimous action of the beneficiaries, and then only when
their interests in the land as *cestuis que trust* and heirs-at-law are
identical.

5. Where it appears to be to the advantage of an infant to reconvert
the personalty into realty, equity may make the election for him.

On bill for the construction of a will.

*Mr. Samuel A. Besson,* for the complainant.

*Mr. Harlan Besson,* for the defendants Georgina Westendorf
and Carrie Smisson.

*Messrs. Weller & Lichtenstein,* for the defendants John Jacob
Schaab and Carrie Smisson, executrix of Lillian Smisson Schaab,
deceased.

*Mr. Kenneth D. Cranstoun,* for the defendant Margaret Smis-
son, administratrix of James Smisson, deceased.

BACKES, V. C.

John J. Smisson left a last will and testament as follows:

"Item: It is my will, and I do order that my wife Jane Smisson shall be permitted to occupy the premises wherein I now reside, free of rent so long as she shall desire so to do, and while she continues to occupy the said property, I do order my executor to pay to her out of my estate the sum of $400.00 per annum to be used by her for keeping the place in order.

"Item: I do give and bequeath unto my said wife the income of one-third of my estate during the term of her natural life. The remainder of the income of my estate I do order to be distributed as follows:

One-fifth thereof shall be paid to my son John Smisson. Two-fifths thereof shall be paid to my son James Smisson, and two-fifths thereof shall be paid to my daughter Sarah Jane Turner, and in addition thereto my said son James and daughter Sarah Jane shall be permitted to occupy the premises where they now reside upon Washington Street in Hoboken, free from rent, so long as they desire. It being expressly understood, however, that none of my children are to draw any income from my estate until the mortgage upon my property in Bloomfield Street, Hoboken, has been paid and satisfied by my executor; which shall be done out of two-thirds of the income of my estate.

"Item: Upon the death of my wife I do order that the one-third of the income hereby bequeathed to her shall be distributed among my surviving three children.

"Item: Upon the death of any of my three children, I do order the portion bequeathed herein to him or her to be distributed among his or her heirs.

"Item: Upon the death of my wife and three children, above named, I do order my executor to sell and dispose of all my real and personal estate at private or public sale, as he shall deem most advisable, and distribute the proceeds of such sale among the children of my said three children equally share and share alike.

"Item: In giving my wife the use of the property where we now reside I also give and bequeath unto her the free use of all the furniture, goods and chattels of every description connected with the house and premises, intending that she shall be responsible to no person for her use of the same.

"Item: I do constitute and appoint James Benson of Hoboken, James Smisson and Sarah Jane Turner, executors of this my last will and testament."

The deceased was survived by his wife, daughter and two sons. All are dead. James was the last to die. The daughter and

James died childless. John left three daughters, Georgina Westendorf, Lillian Smisson Schaab and Carrie Smisson. Mrs. Schaab died before her uncle, James, leaving a husband and an infant son, John Jacob Schaab. She devised and bequeathed her estate to her son. The three grandchildren were living when the testator died. James Benson, remaining executor, is dead. The complainant has been appointed administrator with the will annexed. He was also appointed substituted trustee under the will. The testator died possessed of personal and real property. The estate is ready for distribution, and the complainant asks instruction as to its disposition.

1. The direction to sell the land and divide the proceeds after the termination of the life estates constitutes an equitable conversion of the realty into personalty. *Cook's Executor* v. *Cook's Administrator, 20 N. J. Eq. 375.*

2. The power of sale vested in James Benson, one of the executors, was transmitted to, and is exercisable by, the complainant as administrator with the will annexed. *Comp. Stat. p. 2262 § 13; Griggs* v. *Veghte, 47 N. J. Eq. 179.* I assume the complainant was appointed substituted trustee under the will because of what former Chancellor Pitney said in *In re Smisson, 79 N. J. Eq. 233,* where that learned chancellor had under consideration certain features of this will relating to the income. It appears to have been suggested on the argument that the legal fee to the lands was in the heirs-at-law during the existence of the life estates, and while he said that it had no bearing upon the question before him, he expressed the opinion that, except for the decision of Mr. Justice Dixon in an ejectment suit brought by the children of the testator against the administrator *cum testamento annexo* that the children took the fee, he would be inclined to think, reading the whole of the will together, that it imposed a trust by implication upon the executors, which would carry with it the fee of the land as necessary to the execution of the trust. Accepting this view as correct, it did not call for the appointment of a trustee to sell the lands. The implied trust which carried with it the fee as necessary to its execution was annexed to the office of executor and devolved upon the suc-

cessor to the office, the administrator, under the statute. In other words, there is no trusteeship, nor holding of the fee as trustee, independent of the office of executor, as was the case in *Varick* v. *Smith, 67 N. J. Eq. 1; Hegeman's Executors* v. *Roome, 70 N. J. Eq. 562*, where it was held that the statute (*supra*) does not confer upon an administrator with the will annexed power to make sale of real estate, which by the will was devised to the executors upon trust to be performed by them not as executors but as trustees. The question, however, is wholly academic, as the complainant is both administrator and trustee, and may execute conveyances in his dual capacity.

3. The two surviving grandchildren, Mrs. Westendorf and Carrie Smisson, claim the whole of the principal of the estate to the exclusion of the estate of their deceased sister, Mrs. Schaab, upon the theory that the bequest of the remainder was to the grandchildren as a class and was contingent upon their surviving James, the last living child of the testator. The gift in remainder to the grandchildren is contained in the direction to sell and distribute the proceeds among them upon the death of the life tenants, and, as a general rule, such a bequest is contingent and does not vest until the time for distribution arrives. The reason for this is that the direction to divide being future, the gift also is future. But the rule does not apply when the gift is postponed for the convenience of the estate. *Post* v. *Herbert, 27 N. J. Eq. 540.* And that was the case here. The scheme of the testator is not obscure. The estate was to be kept intact for the benefit of his wife and children, and when that purpose had been served, the grandchildren were to enjoy the principal. The postponement of the payment of the legacy was not because of anything incident to the grandchildren, but was solely for the purpose of letting in the interest of the life tenants. The legacy stands virtually on the same footing as does a bequest for life with remainder over in words of gift, as in *Security Trust Co.* v. *Lovett, 78 N. J. Eq. 445.* The three grandchildren took a vested estate upon the death of the testator and Mrs. Schaab's interest passed to her personal representative.

4. Georgina Westendorf and Carrie Smisson elect to take

the land in lieu of the proceeds of the sale directed by the will. This would have been their right had they been adjudged the sole remaindermen. *Doyle* v. *Blake,* 77 *N. J. Eq. 142.* The personal representative of Mrs. Schaab cannot, of course, elect. The power of sale cannot be defeated except by the unanimous action of the beneficiaries (*Rogers* v. *Lippincott,* 90 *N. J. Eq. 70*), and then only when their interests in the property as *cestuis que trust* and heirs-at-law are identical. *Fluke* v. *Fluke,* 16 *N. J. Eq. 478.* And even if we should regard John Jacob Schaab, the infant son of Lillian Smisson Schaab, as one of the beneficiaries, by virtue of his mother's will, there could be no election on his behalf because the reconversion would diminish his interest by the immediate attachment of his father's curtesy to the land. In *Condict* v. *Condict,* 73 *N. J. Eq. 301,* it was said that the power of sale could not be defeated because one of the beneficiaries was an infant, who could not for himself elect, and that there was no one authorized to elect for him. This statement is to be accepted with the modification that where it appears to be to the advantage of the infant to reconvert the personalty into realty, equity may make the election for him. *13 Corp. Jur. 890;* 6 *R. C. L. 1085; Tomkins* v. *Miller,* 27 *Atl. Rep. 484.*

5. It is claimed that James Smisson, one of the life tenants, advanced moneys for permanent improvement of the realty, and his administratrix by counter-claim seeks to be reimbursed. I understand proofs are to be furnished in support of the claim, and, if well founded, there will be an equitable apportionment.

A decree will be advised in accordance with the foregoing views.